| | |
|---|---|
| **ASHLEY N. WINDLEY** <br> 717 Brandywine Street, SE <br> Apt. 203 <br> Washington, DC 20032 <br><br> *Plaintiff* <br><br> v. <br><br> **CARMAX BUSINESS SERVICES, LLC** <br> 4900 Box Road <br> Glen Allen, VA 23060 <br><br> **SERVE ON:** <br> Resident Agent <br> CSC-Lawyers Incorporating Svc Co. <br> 7 St. Paul Street, Suite 820 <br> Baltimore, MD 21202 <br><br> *Defendant* | * IN THE <br><br> * CIRCUIT COURT <br><br> * OF MARYLAND <br><br> * FOR <br><br> * ANNE ARUNDEL COUNTY <br><br> * CASE NO. C-02-CV-19-004163 <br><br> * <br><br> * <br><br> * <br><br> * <br><br> * |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## COMPLAINT
## AND
## DEMAND FOR JURY TRIAL

Plaintiff, Ashley N. Windley, (hereafter, "Windley") by and through her attorney, Kathleen P. Hyland of Hyland Law Firm, LLC, hereby files this Complaint against CarMax Business Services, LLC (hereafter, "CarMax") and states as follows:

### INTRODUCTION

1. This case involves a consumer who purchased and financed her vehicle from CarMax. Plaintiff lived with her long-term boyfriend, who died suddenly of a heart attack. Following his unexpected and tragic death, Plaintiff



experienced a temporary financial hardship, and her vehicle was repossessed. She timely contacted CarMax and made over $2,400.00 in payments to redeem the vehicle from repossession. CarMax agreed that she had satisfied the past due amounts, but then, without legal notice, CarMax sold her vehicle at auction. When Plaintiff called and asked CarMax to resolve this error, CarMax refused to make her whole for her losses. Then, for the next several months, and despite her requests to stop, CarMax hammered Plaintiff's cellular phone with robocalls in an attempt to collect an alleged, illegal deficiency.

2. The Plaintiff files this action to seek relief from the Defendant's numerous violations of, Md. Code Ann., Com. Law § 13-101, *et seq.*, the Maryland Consumer Protection Act ("MCPA"), the Maryland Consumer Debt Collection Act ("MCDCA"), 47 U.S.C.A. § 227, *et seq.*, the Telephone Consumer Protection Act ("TCPA"), and Md. Code Ann., Com. Law § 14-3201, *et seq.*, Maryland Telephone Consumer Protection Act ("MTCPA"), Conversion, Md. Code Ann., Com. Law § 12-1001, *et seq.*, the Maryland Credit Grantor Closed End Credit Provisions ("CLEC"), and for other relief as this Court deems fit.

## PARTIES

3. Plaintiff Windley is a consumer who resides in Washington, DC. Windley owned the vehicle that is the subject of this dispute, a used 2013 Cadillac CTS 2D Coupe (hereafter, "the vehicle").

4. Defendant CarMax is a business entity registered with the Maryland State Department of Assessments and Taxation. CarMax is the United States'

largest used-car retailer and a Fortune 500 company. CarMax is also an automotive finance business and made a loan for the vehicle which is subject to this dispute.

## JURISDICTION AND VENUE

5. The Circuit Court has exclusive original subject matter jurisdiction over the claims asserted herein because the Plaintiff seeks in excess of $30,000.00 in damages and has exercised her rights to a trial by jury.

6. The Circuit Court has personal jurisdiction over the Defendant because the Defendant regularly conducts business in Anne Arundel County, Maryland and with residents of Anne Arundel County. Defendant issues liens over property, collects debts, and enforces liens in Anne Arundel County. The cause of action for this dispute arose in Maryland.

7. This Court has jurisdiction and venue over the acts complained of in this Complaint.

## FACTUAL ALLEGATIONS

8. Plaintiff Windley is a consumer, as defined by Md. Code Ann., Com. Law, § 13-101 (c) of the Maryland Consumer Protection Act ("MCPA").

9. Defendant CarMax is a "merchant" as defined by Md. Code Ann., Com. Law, § 13-101 (g) of the MCPA.

10. Defendant CarMax is a "debt collector" as defined by Md. Code Ann., Com. Law § 14-201 (b).

11. At all times relevant to this dispute, Windley was employed as a heavy equipment operator on construction sites. She has a Class 7B equipment operator, pipe-fitting, and welding licenses. Windley attended school for crane certification as part of a three-year program for federal certifications. Windley required reliable transportation in the form of a personal automobile to attend work and school.

12. On August 9, 2016, Plaintiff and her boyfriend, Daryl Adamson, with whom she resided, wanted to purchase a new vehicle for Windley. They went to CarMax Auto Superstores, Inc., which is located at 7700 Matapeake Business Drive in Brandywine, Maryland, in furtherance of this goal.

13. On August 9, 2016, Plaintiff purchased her vehicle from CarMax for a cash price of $24,899.00 plus taxes and fees for a total cost of $27,249.70. Plaintiff traded in her prior vehicle, a 2007 BMW, for a $5,000.00 credit and financed the balance of $22,249.70 with CarMax.

14. Plaintiff financed the balance of $22,249.70 directly with CarMax. The interest rate was 5.2% to be paid in 59 monthly payments of $389.19, starting on September 23, 2016.

15. The credit agreement affirmatively elects to be governed by "Subtitle 10, "Credit Grantor Closed End Credit Provisions," of Title 12 of the Commercial Law Article of the Annotated Code of Maryland" ("CLEC.")

16. At the time of the purchase, the vehicle had 22,270 miles on it.

17. At all times relevant to this dispute, Plaintiff used the vehicle primarily for personal, household, and family purposes.

18. Between September 2016 and January of 2018, Windley made timely payments on the vehicle.

19. On January 17, 2018, Mr. Adamson passed away from a sudden heart attack. Ms. Windley went from sharing household expenses to relying on her sole income.

20. The immediate shock of the situation and unanticipated expenses caused Ms. Windley to experience a financial setback, and she fell behind in car payments.

21. On or about April of 2018, CarMax repossessed the vehicle.

22. This vehicle has great personal significance related to Mr. Adamson and Ms. Windley's life together.

23. In spite of her personal tragedy, Ms. Windley was determined not to lose her vehicle. On or about May of 2018, Windley redeemed the vehicle from CarMax and retook possession.

24. Windley's grief then led to a reduction in her work time. Due to her loss of income, Windley continued to struggle financially and missed car payments.

25. On October 26, 2018, CarMax repossessed the vehicle from the front parking lot of a collision shop in Hyattsville, where Windley had taken the vehicle to be serviced.

26. Three days later, on or about October 31, 2018, a representative from CarMax called and asked Windley what she wanted to do with the vehicle. The

representative advised that she had to pay approximately $2,400.00 to redeem her vehicle.

27. Windley advised that she would like to redeem the vehicle.

28. CarMax set up a payment plan with Ms. Windley.

29. The idea of permanently losing her car, which was a significant reminder of Mr. Adamson, was emotionally devastating. Windley saved and took on extra work to make the payments necessary to redeem the vehicle.

30. Upon information and belief, Ms. Windley did not receive a post-repossession, pre-sale notice as required by Maryland law, advising her of any alleged outstanding balance or proposed sale date. As a result, Ms. Windley was not informed of her post-repossession rights pertaining to her vehicle.

31. Windley honored the payment plan with CarMax. On November 18, 2018, Windley paid $900.00 in cash to an associate named Nichole at CarMax and received a receipt. On December 4, 2018, Windley paid $1,200.00 in cash to a CarMax associate named Francine and received a receipt. On December 13, 2018, she paid $360.00 in cash to an associate named Monica at CarMax and received a receipt. According to CarMax's representatives, this satisfied all outstanding sums.

32. Following the last payment, Windley called CarMax. A female representative demanded an additional payment of $301.11. Windley disputed this amount. The representative advised that she needed to "review the recordings."

33. Upon information and belief, the representative was referring to recorded conversations between Windley and CarMax.

34. Following CarMax's internal review of the recordings, a male representative called back and advised Windley that "CarMax was wrong" and that she did not owe any additional sums.

35. Windley was working on a time-sensitive construction project with a company based in Chicago and also needed to get new tags for the vehicle. She asked whether CarMax could store it at their location in Laurel until early January, and whether there would be storage fees. CarMax agreed and said there would not be a fee.

36. On December 17, 2018, according to CarMax's post-sale notice, and without Windley's knowledge or consent, CarMax sold Ms. Windley's car to a new owner for $12,600.00. At the time of the sale, the vehicle was in good operating condition with no mechanical problems.

37. Prior to this illegal disposition of Windley's vehicle, CarMax did not provide any written or oral notice.

38. In early January of 2019, in accordance with their agreement, Windley called CarMax to pick up her vehicle. A representative from CarMax advised her that the vehicle had been auctioned off, and stated that CarMax would call her back.

39. Shortly thereafter, Windley received another call for an alleged balance on the loan of $1,919.70. Believing it was a mistake, Windley was transferred to a male CarMax representative. The representative reviewed

Windley's account and confirmed that the vehicle had been sold and said, "Our mistake. We are so sorry for this misunderstanding."

40. Windley then spoke to a manager, who advised that they would waive the deficiency balance, but had to send her matter to the legal department and would call back in a few days.

41. On January 15, 2019, Windley spoke with "Ray" from the CarMax retention department, at 888-307-0014.

42. On January 22, 2019, Windley spoke with "Ruth," a CarMax manager, at (844) 312-7223.

43. Windley then began to receive debt collection calls from CarMax to her cellular phone demanding the alleged, bogus deficiency balance of $1,919.70.

44. CarMax repeatedly called Ms. Windley's cellular telephone, at (301) 407-8XXX, using an automatic telephone dialing system and/or an artificial or prerecorded voice.

45. When Ms. Windley answered, she would hear a prerecorded message instructing her to hold for the next available representative, and/or a long pause followed by a click.

46. For all answered calls made to Windley's phone during the relevant time period, the CarMax representative who eventually connected demanded $1,919.70 for an alleged deficiency balance.

47. According to Windley's Sprint telephone phone records, CarMax continued to call her on her cell phone, repeatedly and several times per week from

(678) 594-4800, including on the following dates and times: 1/9/2019 at 2:14 pm; 1/10/2019 at 1:20 pm; 1/12/2019 at 1:20 pm; 1/15/2019 at 11:01 am; 1/17/2019 at 2:57 pm; 1/21/2019 at 2:11 pm; 1/22/2019 at 11:28 am; 1/22/2019 at 12:07 pm; 1/24/2019 at 2:31 pm; 1/24/2019 at 3:41 pm; 1/26/2019 at 2:02 pm; 1/29/2019 at 2:25 pm; 1/30/2019 at 2:46 pm; 2/1/2019 at 11:17 am; 2/5/2019 at 11:43 am; 2/6/2019 at 1:45 pm; 2/7/2019 at 11:50 am; 2/7/2019 at 2:16 pm; 2/8/2019 at 11:47 am; 2/8/2019 at 2:30 pm; 2/11/2019 at 1:34 pm; 2/13/2019 at 2:16 pm; 2/14/2019 at 2:40 pm; 2/16/2019 at 2:12 pm; 2/19/2019 at 11:34 am; 3/19/2019 at 11:55 am; 4/19/2019 at 11:12 am; 4/20/2019 at 1:44 pm; 5/3/2019 at 11:53 am; 5/4/2019 at 12:31 pm; 5/9/2019 at 11:32 am; 5/17/2019 at 1:03 pm; 5/17/2019 at 2:57 pm; 5/23/2019 at 1:23 pm; 5/24/2019 at 2:17 pm; and 5/28/2019 at 11:22 am.

48.     Initially, Windley hoped that CarMax would restore her for her losses.

49.     In January of 2019, a male representative from CarMax called to advise that the best they could do would be to repay Windley the funds she had paid to redeem the vehicle, in exchange for a release of her claims. This offer was not sufficient, as CarMax had knowingly taken and sold her vehicle for its own personal, financial gain.

50.     Following this conversation, a female representative from CarMax called and advised Ms. Windley that the repossession and sale was Windley's fault because she was supposed to make more payments.

51. On or about January 24, 2019, Windley orally revoked consent for CarMax to call her on her cellular phone.

52. At least twenty-six of the thirty-six calls listed above were made after Windley revoked consent.

53. CarMax has put negative information for the alleged deficiency balance on Windley's credit reports, which has caused her credit score to decrease.

54. To date, CarMax has not returned Windley's vehicle, nor made her whole for her losses.

55. As a result of CarMax's actions, Plaintiff has suffered numerous actual damages, including:

   a. Loss of monthly payments;

   b. Loss of excess monies paid for false redemption charges;

   c. Ongoing costs of substitute transportation, including rides from her cousin for $50/week or $20/day in emergencies, and costs of bus/train fare once per week;

   d. Loss of her ownership interest in the vehicle;

   e. Stress with a physical manifestation, anger, frustration, humiliation, crying, depression, and sleeplessness;

   f. Inconvenience of a longer commute;

   g. Missed visits to her therapist for grief counseling;

   h. Loss of a vehicle that had great personal significance and importance associated with her deceased partner.

## COUNT ONE
### VIOLATIONS OF THE MD. CONSUMER PROTECTION ACT
### Md. Code Ann., Com. Law § 13-101, *et seq.*

56. The Plaintiff incorporates by reference the foregoing allegations of this Complaint.

57. The Defendant is subject to all of the consumer protections mandated by the MCPA which, among other things, prohibits unfair or deceptive practices in the sale of consumer goods. MCPA, Com. Law §§ 13-303(1).

58. Unfair or deceptive trade practices include any false, falsely disparaging, or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers. MCPA, Com. Law §§ 13-301(1).

59. Unfair or deceptive trade practices include representations that consumer goods have a characteristic or use which they do not have. MCPA, Com. Law §§ 13-301(2)(i).

60. Unfair or deceptive trade practices include any failure to state material facts and representations that consumer goods are of a particular standard or quality which they are not. MCPA, Com. Law §§ 13-301(3) and §§ 13-301(2)(iv).

61. Under MCPA, Com. Law § 13-303(4), a person many not engage in any unfair or deceptive trade practice in the extension of consumer credit.

62. Defendant is liable for unfair and deceptive practices in the extension of consumer credit.

63. Defendant violated the foregoing provisions of the MCPA by making oral misrepresentations about the repossession repayment plan.

64. The Plaintiff reasonably relied on the Defendant's oral statements about the repossession repayment plan. Windley would not have paid the repossession repayment monies to CarMax for this vehicle had she known that CarMax would illegally auction off her vehicle.

65. When Defendant violated the MCDCA below by engaging in illegal debt collection activities outlawed by that statute, it also engaged in a *per se* violation of the MCPA.

66. When Defendant violated the MTCPA below by engaging in illegal telephone debt collection, it also engaged in a *per se* violation of the MCPA.

67. The Plaintiff suffered actual damages as a direct result of her reliance.

**WHEREFORE**, Plaintiff respectfully requests that the Court enter judgment in favor of Plaintiff and against Defendant for:

1. Actual damages to be determined by a jury in excess of Seventy Five Thousand Dollars ($75,000);
2. Interest and costs; and
3. Such other relief as the nature of this cause may require.

## COUNT TWO
### VIOLATION OF THE MD. CONSUMER DEBT COLLECTION ACT
### Md. Code Ann., Com. Law § 14-201, *et seq.*

68. The Plaintiff incorporates by reference the foregoing allegations of this Complaint.

69. Plaintiff is a "Person" as that term is defined in the MCDCA § 14-201(d).

70. The Defendant is a "Collector" as that term is defined in the MCDCA § 14-201(b).

71. The MCDCA states as follows: "In collecting or attempting to collect an alleged debt a collector may not […] (8) Claim, attempt, or threaten to enforce a right with knowledge that the right does not exist.

72. The MCDCA further states that a collector may not […] (3) Disclose or threaten to disclose information which affects the debtor's reputation for credit worthiness with knowledge that the information is false.

73. Pursuant to § 14-202 (11), a collector may not engage in any conduct that violates §§ 804 through 812 of the federal Fair Debt Collection Practices Act.

74. Pursuant to §1692e of the FDCPA, which has been incorporated into the MCDCA above as Pub.L. 90-321, Title VIII, § 807, a debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. This prohibition specifically includes:

> a. The false representation of the character, amount, or legal status of any debt. §1692e(2);

  b. The false representation of any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt. §1692e(2);

  c. The implication that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person. §1692e(4);

  d. Threats to take legal actions that cannot be lawfully taken. §1692e(5).

75. By wrongfully auctioning off the Plaintiff's vehicle when Plaintiff no longer owed any debt, the Defendant violated MCDCA § 14-202(8), because it did "Claim, attempt, or threaten to enforce a right with knowledge that the right does not exist."

76. By repeatedly making oral and written demands for the bogus deficiency amount, Defendant violated MCDCA § 14-202(8) and § 14-202(11).

77. Defendant CarMax violated MCDCA § 14-202(3) by placing a trade line and negative information on the Plaintiff's credit reports for the bogus deficiency amount.

78. Pursuant to § 14-203, a collector in violation of the MCDCA is liable for any damages proximately caused by the violation, including damages for emotional distress or mental anguish suffered with or without accompanying physical injury.

79. As a direct and proximate result of the Defendant's wrongful conduct, the Defendant caused the Plaintiff to suffer economic and noneconomic damages, injury, harm and loss. The specific harms include but not limited to: loss of money, loss of use of her vehicle, loss of credit, loss of sleep, anxiety, humiliation, embarrassment, inconvenience and physical manifestations.

**WHEREFORE**, Plaintiff respectfully requests that the Court enter judgment in favor of Plaintiff and against Defendant for:

1. Actual damages to be determined by a jury in excess of Seventy Five Thousand Dollars ($75,000);
2. Interest and costs; and
3. Such other relief as the nature of this cause may require.

### COUNT THREE
### VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT
### 47 U.S.C.A. § 227, *et seq.*

80. The Plaintiff incorporates by reference the foregoing allegations of this Complaint.

81. Defendant used an "automatic telephone dialing system" as defined by 47 U.S.C.A. § 227(a)(1).

82. Defendant willfully violated the TCPA with respect to the Plaintiff by using an auto-dialer to make calls to Plaintiff's cellular telephone after Plaintiff notified Defendant that she did not owe a debt and the Defendant admitted it was an error.

83. Defendant knowingly violated the TCPA with respect to the Plaintiff for each of the auto-dialer calls made to the Plaintiff's cellular telephone after Plaintiff revoked consent for Defendant to call her at that number.

84. Defendant repeatedly placed non-emergency telephone calls to Plaintiff by using an automatic telephone dialing system without the Plaintiff's prior express consent, in violation of federal law, including 47 U.S.C. § 227(b)(1)(A)(iii).

85. Pursuant to 47 U.S.C. § 227(b)(3)(B), as a result of each call made in violation of the TCPA, Plaintiff is entitled to an award of $500.00 in statutory damages.

86. Pursuant to 47 U.S.C. § 227; the TCPA allows treble damages for willful and knowing violations.

**WHEREFORE**, Plaintiff respectfully requests that the Court enter judgment in favor of Plaintiff and against Defendant for:

1. Actual damages to be determined by a jury in excess of Seventy Five Thousand Dollars ($75,000);
2. Statutory damages, including treble damages for willful violations;
3. Enjoinder from further violations against Defendant CarMax;
4. Interest and costs; and
5. Such other relief as the nature of this cause may require.

## COUNT FOUR
### VIOLATIONS OF THE MARYLAND TELEPHONE CONSUMER PROTECTION ACT
### Md. Code Ann., Com. Law § 14-3201, *et seq.*

87. The Plaintiff incorporates by reference the foregoing allegations of this Complaint.

88. Pursuant to Md. Com. Law § 14-3201(2), a person may not violate the Telephone Consumer Protection Act, 47 U.S.C. § 227.

89. For the reasons stated in Count Four, Defendant CarMax violated the Telephone Consumer Protection Act, 47 U.S.C. § 227.

**WHEREFORE**, Plaintiff demands declaratory relief against Defendant CarMax, stating that the Defendant's violations of the Federal Telephone Consumer Protection Act constitute a violation of the Maryland Telephone Consumer Protection Act, and for any other relief as this Court deems fit.

## COUNT FIVE
### VIOLATION OF THE MD. CREDIT GRANTOR CLOSED END CREDIT PROVISIONS
### Md. Code Ann., Com. Law § 12-1001, *et seq.*

90. The Plaintiff incorporates by reference the foregoing allegations of this Complaint.

91. CarMax is "credit grantor" within the meaning of Md. Code Ann., Com. Law § 12-1001(b) ("CLEC").

92. Ms. Windley is a "consumer borrower" within the meaning of CLEC, Com. Law § 12-1001(d).

93. Pursuant to § 12-1021(f) through § 12-1021(h)(1) of CLEC, for 15 days after the credit grantor gives notice of a repossession, a consumer borrower may redeem and take possession of the property and resume performance of the agreement by tendering the amount due under the agreement at the time of the redemption.

94. CarMax violated CLEC by failing to send the appropriate notices after repossession pursuant to § 12-1021(e).

95. Pursuant to § 12-1021, by violating CLEC, CarMax is not entitled to any deficiency judgment to which it would be entitled under the loan agreement.

96. Pursuant to § 12-1018, by violating CLEC, CarMax is not entitled to any costs, fees, or other charges collected on this loan.

WHEREFORE, Plaintiff prays for a declaratory judgment stating that due to CarMax's violations of CLEC, CarMax is barred from collecting any deficiency balance from Plaintiff.

## COUNT SIX
### CONVERSION

97. The Plaintiff incorporates by reference the foregoing allegations of this Complaint.

98. CarMax caused Ms. Windley's vehicle to be sold when she was not behind in any payments.

99. CarMax's sale of the vehicle constitutes conversion, wrongful sale, and civil theft of Ms. Windley's vehicle.

100. CarMax also collected monies from Windley to redeem the vehicle.

101. These sums were discrete and identifiable, as they were collected specifically for Ms. Windley's account.

102. By taking Ms. Windley's redemption amounts and illegally auctioning her vehicle, CarMax converted the redemption monies into unearned profits.

103. As a direct consequence of CarMax's acts, practices, and conduct, Ms. Windley lost possession and use of her vehicle and incurred and continues to incur costs for substitute transportation, suffered humiliation, inconvenience, emotional distress, anxiety, and loss of sleep, and incurred other losses and damages.

104. CarMax acted with actual malice towards Ms. Windley, in willful and wanton disregard of her interests, in pursuit of CarMax's own financial interests.

**WHEREFORE**, Plaintiff respectfully requests that the Court enter judgment in favor of Plaintiff and against Defendant for:

1. Actual damages, compensatory, and punitive damages to be determined by a jury in excess of Seventy Five Thousand Dollars ($75,000);
2. Interest and costs; and
3. Such other relief as the nature of this cause may require.

### COUNT SEVEN
### CLAIM FOR ATTORNEY'S FEES ALLOWED BY LAW

105. Pursuant to Rule 2-703(b) the Plaintiff includes this separately numbered claim for attorney's fees in this initial pleading. Further, pursuant to

Rule 2-703(d), the Plaintiff advises the court and the Defendant that she believes that this case is likely to result in a substantial claim for attorney's fees for services over a significant period of time.

Dated: December 19, 2019                Respectfully submitted,

/s/ Kathleen P. Hyland, Esq.
Kathleen P. Hyland
CPF #: 1206200116
HYLAND LAW FIRM, LLC
16 E Lombard Street, Suite 400
Baltimore, Maryland 21202
(410) 777-5396 (Tel.)
(410) 777-8237 (Fax)
kat@lawhyland.com

*Attorney for Plaintiff*